# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS CENSKE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 3651 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER
## AND RULING ON POST TRIAL MOTIONS AND
## GOVERNMENT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF

### INTRODUCTION

On April 3, 2014, Mr. Censke filed a motion for "Reconsideration" of the Memorandum Opinion and Findings of Fact and Conclusions of Law entered after a two-day bench trial on July 15-16, 2013. [Dkt. 216]. *See Censke v. United States,* 2014 WL 1066247 (N.D.Ill.2014) [Dkt. 215]. Mr. Censke's motion asserted that "too many [errors] exist to review," and asked that the Memorandum Opinion be stricken in its entirety. [Dkt. 216 at 1].

Mr. Censke's motion for reconsideration insisted that the veritable profusion of errors proves rather conclusively that the judge is a fool or worse. Mr. Censke said he:

> "laughed so hard upon receipt of the Apocrophyla [sic] opinion, entered on 3-19-14, he had to check the calendar to make sure it wasn't <u>April Fools</u>, because this 'Bullshit' is a Joke. As an 'Artist in Residence,' it's Good material For my Book About Police State: 'CRAZY AS HELL!'"

Dkt. 216 at 1. (Double underlining and capitalization in original).[1]

---

[1] Throughout this Opinion I have quoted Mr. Censke's briefs as he wrote them.

Warming to the task, Mr. Censke goes on to say that "[s]o many Clerical, Factual and LEGAL ERRORS EXIST IN this COURTS Opinion, I'd be AFRAID to WIPE my ASS WITH IT." *Id.* He concludes:

> "II. IF the Court is not HOSTILE, something is WRONG? Judges Have been known to Play with Penis Pumps under their GOWNS, etc. IT MAKES A CITIZEN WONDER WHAT MAGISTRATE COLE WAS DOING, to up to [sic] these CONCLUSIONS?

The allusion to hostility contrasts with Mr. Censke's repeated statements about the court's fairness, *Censke*, 2014 WL 1066247, *10, how "very understanding and gracious" I had been to him (Tr. 343) how I had accorded him every latitude, and how I would be a "good person to go out to dinner with or to a party...." (Tr. 376-77).

> Following this paragraph is "# N.1", which reads:

> "Note 1 When it says 'WE THE PEOPLE', it means ME the people, not you; 'as you work for me; NO DEVINE RIGHT OF KINDS EXIST IN USA!'

[Dkt. #216 at 2].

Mr. Censke ends with a "P.S."

> Q) What kind of lawyer doesn't know the law?
>
> A) A Judge
>
> Q) What is black and brown and looks good on a lawyer?
>
> A) A German Shepard.
>
> Hahaha. April Fools. :)"

[Dkt. 216 at 2].

2

The government's responsive memorandum [Dkt. 218] was followed by the plaintiff's 12-page reply brief, filed on July 14th. [Dkt. 219]. That document, unlike the motion, itself, now sought a new trial as "the proper remedy" for the mistakes that the motion for reconsideration claimed pervaded the Memorandum Opinion and Findings of Fact and Conclusions of Law. [2]

The Reply, unlike the Motion, was filled with citations to cases, none of which supported the various claims of error. But, like the Motion, the Reply simply ignored the exhaustive analysis of the evidence in *Censke v. United States*, 2014 WL 1066247 (N.D.Ill. 1014) and refused to come to grips with the inescapable fact that the outcome of this case was unfavorable to him because he was not a believable witness, and the defendants' witnesses were; his testimony was vacillating, inconsistent, and implausible; his demeanor could not have been more indicative of his mendacity; and he had been convicted of four serious felonies within the past ten years, which bore on his credibility. *Censke*, 2014 WL 1066247, *11.

He insists his version of events is right even though his testimony was utterly implausible, filled with inconsistencies and persistent refusals to respond in a straightforward way to the simplest of questions when it suited his purpose to be evasive – which was almost always. At one point Mr. Censke claimed he had never been involved in a civil case even though he had represented himself in any number of civil cases arising from claimed incidents in prison. Things that were beyond debate he would not admit. And, he had four felony convictions, admissible under Rule 609, Federal Rules of Evidence. [Dkt. 200, Tr. 275]. By contrast, the testimony of the defense witnesses was

---

[2] I shall treat the Motion for Reconsideration as a timely filed Rule 59 motion as it was filed within 28 days of the entry of judgment. [Dkt. 214]. *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 495 (7th Cir. 2011). The minute order entering judgment against the plaintiff and in favor of the defendant and dismissing the case in its entirety, satisfied the separate document requirement of Rule 58. *See Raveling v. HarperCollins Publishers, Inc.*, 2005 WL 900232, 5-6 (7th Cir. 2005).

consistent and believable. Their demeanor inspired confidence in the truthfulness of their testimony as opposed to that of Mr. Censke which inspired the opposite. *See infra* at 8; *Censke*, 2014 WL 1066247, *6.

At one point in the trial, Mr. Censke boasted that he was "quite capable of manipulating [his] position to shoot a move is what they call it in prison." (Dkt. 200, Tr. 267). And that is exactly what Mr. Censke tried to do in this case.

Although he had every opportunity to complain about his treatment by the defendants to numerous people, including medical staff, some of whom he even conceded he liked, the evidence proved that Mr. Censke never once even mentioned the mistreatment alleged in his Complaint in this case to anyone at the MCC. And, the relevant jail and hospital records likewise contained no complaints by Mr. Censke to medical personnel about his alleged mistreatment at the MCC. (Dkt. 200, Tr. 31, 41, 45, 47, 126, 136, 141, 143, 145-47; 346, 401, 409).[3] When he did complain about unrelated health issues they were reflected in the records. And he could have complained daily if he chose to do so. (Tr. 405, 410).

The evidence was clear that Mr. Censke's mental health status at the time of the alleged misconduct involved in this case was stable, [Dkt. 200, Tr. 41] – one of the nursing staff described him as affable (Tr.413) – thereby negating any argument that his failures to complain were somehow related to mental health issues, which Mr. Censke's testimony at points seemed obliquely to suggest might account for these omissions. Of course, these omissions were significant under the doctrine

---

[3] Mr. Censke's own witness, Dr. Dana, testified that she visited with Mr. Censke several times during his stay at the MCC between June and August of 2008, but that he never complained about a verbal assault by an officer at the MCC or about any mental or emotional injury he suffered at the hand s of anyone at the MCC.

4

of impeachment by omission.[4]

Based upon the statements in Mr. Censke's post trial motion, which the government finds not only demeaning and abusive, but *threatening* as well – Mr. Censke is currently serving a sentence of 120 months for having sent threatening communications to attorneys and a County Clerk. *United States v. Censke*, 449 Fed.Appx. 456 (6th Cir. 2011) – the government has asked that Mr. Censke be sanctioned under Rule 11.

# I.
# ANALYSIS

### A.

Mr. Censke's two page, single spaced, hand-written motion denouncing the court ignores the extensive analysis of the evidence in its prior Opinion, *see Censke v. United States*, 2014 WL 1066247 (N.D.Ill. 2014), offers no cites to the trial record, no case law in support of its arguments, and no coherent analysis, even though Mr. Censke plainly knows how to cite cases and even though a motion for a new trial under Rule 59 motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986). Proper grounds for granting a new trial are essentially the same. *Index Futures Group, Inc. v. Schmidt*, 1997 WL 187321, at *1 (N.D. Ill. 1997).

A similar showing is required on a motion to amend a district court's findings of fact or conclusions of law under Rule 52(b). *See, e.g., Sunrise Opportunities, Inc. v. Regier*, 2006 WL

---

[4] Impeachment by omission is a well-established subcategory of impeachment by contradiction. The theory of impeachment by omission is that if a former statement fails to mention a material circumstance presently testified to, which it would have been natural to mention in the prior statement, the prior statement is sufficiently inconsistent to be admitted to impeach the present testimony. *See Moylan v. Meadow Club, Inc.* 979 F.2d 1246, 1249 (7th Cir.1992); *United States v. Fonville,* 422 Fed.Appx. 473, 482-483 (6th Cir. 2011);*United States v. Useni,* 516 F.3d 634, 652 (7th Cir.2008).

581150, at *4 (N.D. Ill. 2006). A motion to reconsider is not a vehicle for advancing arguments or theories that "could and should have been made" prior to judgment, *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). Nor is it an appropriate forum for rehashing previously rejected arguments. *Caissa Nationale de Credit Agricole v. CBI Indus., Ins*., 90 F.3d 1264, 1270 (7th Cir. 1996).

Findings of fact, whether based on oral or other evidence, must not be set aside unless "clearly erroneous." (Fed.R.Civ P. 52(a)(6))."A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948). "Credibility determinations based on the plausibility of competing accounts are factual findings that are overturned on appeal only if clearly erroneous." *United States v. Thornton,* 197 F.3d 241, 247 (7th Cir.1999).

Mr. Censke's opening and reply briefs simply refuse to accept the fact that the court did not believe him and found his testimony contrived and knowingly false while crediting the testimony of the defendant's witnesses. The reasons why Mr. Censke's version of events was rejected is spelled out in detail in *Censke, supra*, and need not be repeated. What Mr. Censke fails to understand is "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). *See also, Xodus v. Wackenhut Corp.,* 619 F.3d 683, 687 (7th Cir.2010)("When a trial judge's finding is based on his decision to credit the testimony of one of two... facially plausible stories that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." )

A manifest error of law requires a showing of a "wholesale disregard, misapplication, or

failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Unless Mr. Censke establishes that judgment was based on a manifest error of fact or law, his motion must be denied. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.1987). That he has not done.

**B.**

**There Were No Clearly Erroneous Errors of Fact**

Findings of fact must not be set aside unless clearly erroneous, with due regard for the trial court's opportunity to judge the witnesses' credibility. *See* Fed.R.Civ. P.52(a)(6).

Mr. Censke's reference to an erroneous statutory cite in footnote 1 of the Memorandum Opinion, 2014 WL 1066247, *1, played no role in the ultimate resolution of the case.[5] Its only significance is that it further bolsters the correctness of the denial of Mr. Censke's motions to appoint counsel (Dkt #158, 171, 192, 194) by showing his sophistication as a *pro se* litigant.[6]

Similarly inconsequential is the allegation of error regarding whether a particular statement made by a psychologist reflected in plaintiff's Exhibit 5 is a medical evaluation or psychological

---

[5] Note 1 said: "Mr. Censke's claims regarding the conditions of his confinement were dismissed upon initial review pursuant to 42 U.S.C. § 1915A. (Dkt. # 22)." That cite was obviously in error, as Mr. Censke's careful reading revealed.

[6] Not only was the case uncomplicated, involving straightforward factual, rather than complicated legal issues, but Mr. Censke knew the identities of all relevant witnesses and had access to them and the relevant documentary evidence. Mr. Censke's numerous filings and his demonstrated skill and creativity, both prior to and during the trial, reflect an obvious awareness of how to obtain, develop, and present evidence at trial. Under the Seventh Circuit's precedents, Mr. Censke was not entitled to have counsel recruited for him. *See, e.g., Olson v. Morgan*, 750 F.3d 708 (7th Cir. 2014); *Barrett v. Wallace,* _ Fed.Appx._, 2014 WL 3058289, 3 (7th Cir.2014); *Millbrook v. United States*, _Fed.Appx._, 2014 WL 1801732, *3 (7th Cir. 2014); *Rowe v. Morton*, 525 Fed.Appx 426, 429 (7th Cir. 2013); *Romanelli v. Suliene,* 615 F.3d 847, 851 (2010); *Millbrook v. United States*, _Fed.Appx._, 2014 WL 1801732, *3 (7th Cir. 2014)(recognizing that while plaintiff's transfer may create burdens, transfer alone does not require automatically that plaintiff have counsel, especially, where, as here, plaintiff knew the identities of all employees involved, and participated in relevant discovery).

opinion. The remaining alleged "errors of fact" merely reflect Mr. Censke's disagreement with the court's assessment of the credibility of witnesses Donald McGuire (¶¶ 3-4), Dr. Paul Harvey (¶ 5), and Mr. Censke himself (¶¶ 6-8).

Ignoring the extended discussion of the evidence in *Censke*, 2014 WL 106624, Mr. Censke incorrectly argues that there is no evidence that disputes his testimony regarding the alleged assault and battery and that there are plausible reasons why there is no support for his claimed injury in the record. Apart from the fact that the testimony from everyone other than Censke was adverse to Mr. Censke, Mr. Censke's argument is merely an expression of disagreement with the court's credibility determination, not a basis for overturning it. Questions of credibility are for the court in a bench trial, and Mr. Censke's tacit assumption that his testimony had to prevail is simply wrong. *Anderson v. Bessemer City*, 470 U.S. at 575. "'It is the prerogative of a jury or other trier of fact to disbelieve uncontradicted testimony unless other evidence shows that the testimony must be true.'" *Harvey v. Office of Banks and Real Estate,* 377 F.3d 698, 712 (7th Cir. 2004). Here the evidence conclusively showed that Mr. Censke's case was a carefully contrived fiction.

**C**.

**There Are No Manifest Error of Law**

**1.**

Mr. Censke's three specifications of manifest error of law are: use of his deposition transcript at trial for impeachment when it could not be admitted in his case in chief; the applicability of the Prison Litigation Reform Act to FTCA proceedings; and the court's consideration of Mr. Censke's history of having filed pro se civil complaints against prison officials. Mr. Censke has failed to cite any legal authority in his opening motion – although he cites a number of cases in his reply brief.

8

Were this a filing by a lawyer, the arguments would be waived under the familiar principle that unsupported and skeletal arguments are waived, *Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 718 (7th Cir. 2012), and authorities and arguments raised for the first time in a reply brief that could and should have been raised in the opening brief will not be considered. *See Clarett v. Roberts,* 657 F.3d 664, 674 (7th Cir.2011); *Hussein v. Oshkosh Motor Truck Company*, 816 F.2d 348, 360 (7th Cir. 1987) (Posner, J., concurring). But, Mr. Censke is *pro se*, and so we shall consider the contentions.

Mr. Censke argues that his inability to introduce his own deposition taken by the defendant was reversible error. Of course it was not error at all. The deposition was hearsay and inadmissible if used by Censke as a plaintiff's exhibit. *See* Rule 804(b)(1), Federal Rules of Civil Evidence. This was explained to Mr. Censke at the trial who actually said that he agreed. (Tr. 347-48). Even if the deposition had been perfectly consistent with Mr. Censke's direct examination, the deposition would still have been inadmissible since Mr. Censke had a motive to falsify at the time of the deposition and the doctrine of prior consistent statements barred admission. *See Tome v. United States*, 513 U.S. 150 (1995).[7] Of course, the deposition was available for use by the defendant under classic principles of impeachment by prior inconsistent statements. Fed. R. Civ. P. 32(a)(2).

Mr. Censke does not develop his argument regarding the Prison Litigation Reform Act. The plain language of the Act applies to any "federal civil action," which would necessarily include Censke's claims under the FTCA. Moreover, the Act was not cited or relied upon in this court's decision so it is unclear what purpose reconsidering its applicability to the case would serve.

---

[7] This was explained to Mr. Censke prior to (Tr. at 27-28) and at trial. (Tr. 348). He said he understood and that the ruling was correct. (Tr. 348).

9

**2.**

Another of Mr. Censke's arguments is that once Judge Ashman had granted the plaintiff's motion *in limine* to exclude evidence of other lawsuits against his jailers, that ruling was frozen in amber and could not be revisited after the case was transferred here following Judge Ashman's death. That argument is plainly wrong.

The history of Mr. Censke's prior cases in which he represented himself first came up in connection with his motions for recruitment of counsel. Prior to the transfer of the case to me, Mr. Censke had filed four motions for "appointment of counsel." All were denied. [8] Following the transfer of the case here, Mr. Censke filed his fifth motion for recruitment of counsel. I denied that motion on September 24, 2012, noting, *inter alia*,

> "I am convinced that Mr. Censke can try his case as well as any lawyer. *As he told me today* [during the telephonic status conference] *he has had many federal cases*, at least five of which were separate matters. [9] Some 15 others involved various aspects of several cases. Mr. Censke's case involves no legal or evidentiary issues with which he cannot cope. Indeed, the case will be resolved purely on the basis of the credibility of the plaintiff and the defendant's witnesses, who deny completely Mr. Censke's version of events."

[Dkt. 158] (emphasis supplied). As I told Mr. Censke, these conclusions were fortified as the trial went on and I observed Mr. Censke's performance. *See, e.g.,* Tr. 307-10; 347. Mr. Censke expressly acknowledged that he "enjoy[ed] self representation," and he "totally agree[d] with [the court] for

---

[8] The first was denied without prejudice by Judge Marovich on July 21, 2009. [Dkt. 12]. The second was brought a month later and again denied without prejudice by Judge Marovich on September 11, 2009. (Dkt. 22]. The third motion was filed a week after Judge Marovich's denial of the second motion and was also denied without prejudice on October 8, 2009. [Dkt. 30]. The fourth motion was filed on June 13, 2011 and was denied without prejudice by Magistrate Judge Ashman on June 21, 2011, following reassignment of the case to him when the parties consented to his jurisdiction. [Dkt. 110].

[9] He even represented himself in his own criminal case for violating 18 U.S.C. §876(c). *United States v. Censke*, 449 Fed.Appx. at 458.

the record nobody could scrutinize and understand and present this [case] as well as I did." (Tr. 307).

Mr. Censke's history of suing his jailers came up again when Mr. Censke moved *in limine* to bar the introduction of evidence of several of his prior complaints in other cases. The government did not provide Judge Ashman with any cases supporting admissibility of the proffered evidence. Understandably, Judge Ashman granted Mr. Censke's motion, but said that he would reconsider his ruling if the government's lawyers presented him with appropriate case authority. [Dkt. 189, Tr. 49].

Unfortunately, thereafter the government did not provide Judge Ashman with a single case, even though there were numerous cases holding that evidence of a plaintiff's prior lawsuits is admissible so long as it is not used to prove propensity to file baseless claims, which is barred by Rule 404(b), Federal Rules of Evidence, but is used to prove an issue that is relevant in the particular case. *See, e.g., Mathis v. Phillip Chevrolet, Inc.*, 269 F.3d 771, 775 (7th Cir. 2001)(evidence admissible to show plaintiff was engaged in a plan or scheme to harass Chicago-area car dealerships, and that his methods or *modus operandi* in the prior suits were very similar to the approach he employed in this case); *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 495 (7th Cir. 1998); *Tomiano v. O'Brien*, 215 Fed. Appx. 359 (2nd Cir. 2009); *Barbee v. Southeastern Pennsylvania Transp. Authority*, 323 Fed. Appx. 159 (3rd Cir. 2009); *Westfield Ins. Co. v. Harris*, 134 F.3d 608 (4th Cir. 1998); *United States v. Gay,* 967 F.2d 322, 328 (9th Cir. 1998); *Hickey v. Myers*, 2013 WL 2418252 (N.D.N.Y. 2013); *Otto v. Commerce Street Capital*, 2013 WL 2357623 (E.D. Pa. 2013); *VanDeelen v. Johnson*, 2008 WL 4683022 (D. Kan. 2008).[10]

While under the law of the case doctrine Judge Ashman's ruling on the motion *in limine*

---

[10] The government's motion for a directed verdict was a reprise of the situation before Judge Ashman. The government insisted there was a Seventh Circuit case that governed a disputed point. When asked for the case, the government didn't have it and couldn't name it. (Tr. 361).

accompanied the case when it was transferred here. *Minch v. City of Chicago,* 486 F.3d 294, 301 (7th Cir.2007). But the doctrine is not a straight jacket or a limitation on judicial power. *Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (Holmes, J.); *Castro v. United States*, 540 U.S. 375, 384 (2003); *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008). Ultimately, the doctrine is a discretionary one, *Bagola v. Kindt*, 131 F.3d 632, 637 (7th Cir.1997), permitting a court to revisit its own earlier ruling or that of a predecessor if it has a strong and reasonable conviction that the ruling was wrong and if rescinding it would not unduly harm the party that benefitted from it. *Avitia v. Metropolitan Club of Chicago*, 49 F.3d 1219, 1227 (7th Cir. 1995). Thus, regardless of the court's initial ruling on a motion *in limine*, it may alter its ruling during the course of trial if warranted.

Rulings on motions *in limine* are by definition "preliminary," *Luce v. United States*, 469 U.S. 38, 41-42 (1984), and are subject to change as the case unfolds. *See Ohler v. United States*, 529 U.S. 753, 758 (2000); *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006); *Ultra-Precision Mfg. Ltd. v. Ford Motor Co.,* 338 F.3d 1353, 1359 (Fed Cir.2003). "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce,* 469 U.S. at 41.[11]

Notwithstanding that Mr. Censke prevailed on his motion *in limine*, the cases were consistent in holding that there was no automatic prohibition against the introduction of evidence of a party's prior law suits. Quite the contrary; the cases went exactly the other way and made clear that so long

---

[11] These principals apply with even greater force in a bench trial where "the trial judge has flexibility to provisionally admit testimony or evidence and then discount or disregard it if upon further reflection it is entitled to little weight or should not have been admitted at all." *Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, 2010 WL 3894444, at *1 (N.D. Ill. 2010); *SmithKlineBeecham Corp. v. Apotex, Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003) (Posner, J.) ("In a bench trial it is an acceptable alternative to admit evidence of borderline admissibility and give it the (slight) weight to which it is entitled."), (parenthesis in original), *vacated upon rehearing en banc and aff'd on other grounds*, 403 F.3d 1331 (Fed. Cir. 2005).

as the evidence of prior suits was relevant to an issue other than propensity, it was admissible, subject of course to the strictures of Rule 403. *See supra* at 11.[12]

The Federal Rules of Evidence treatment of relevancy is liberal and inclusive. *Tome v. United States*, 513 U.S. 150 (1995). Like other Courts of Appeals, the Seventh Circuit has recognized that the relevancy requirement is a "minimal" one. *United States v. Murzyn*, 631 F.2d 525, 529 (7th Cir. 1980). "[T]he definition of relevancy adopted in Rule 401 is an expansive one, and for evidence to be relevant under this definition, it need not conclusively prove the ultimate fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Even if the proposition for which it is offered still seems improbable after the evidence is considered, the proffered evidence is not necessarily irrelevant. As Dean McCormick has aptly phrased it, to be relevant evidence need only be a brick, not a wall." *United States v. Pollard*, 790 F.2d 1309, 1312 (7th Cir. 1986)(citations omitted). Thus, the question is not whether the disputed evidence has great probative weight, but whether there is any. *United States v. Marks*, 816 F.2d 1207, 1211 (7th Cir. 1987).

Relevance does not exist in a vacuum; it is not inherent in any item of evidence, but exists only as a relation between an item of evidence and the matter sought to be proved. *See* 2 *Weinstein's Federal Evidence,* § 401.04[2][a] (Joseph M. McLaughlin ed., 2d ed.2007). Decisions on relevancy are made on a case-by-case basis, and each is dependent on surrounding facts, circumstances, and issues. *See* 1 C. Mueller and L. Kirkpatrick, *Federal Evidence,* § 4:3 at 568 (3d ed.2003).

---

[12] I explained at trial that the government's failure to have provided Judge Ashman with cases did not require that I perform a prefrontal lobotomy and ignore the case law of which I was aware. (Tr.351).

13

Here, the government offered evidence of some of Mr. Censke's prior suits because it was relevant to his credibility, his claimed damages, bias, and common scheme. These are all bases that have been approved in prior cases. At trial, I explained to Mr. Censke the very limited purpose for which I was receiving the specific evidence that had been offered before Judge Ashman. (Tr. 351). I told him that I was not letting that evidence in to show that he was litigious. (Tr. 350)("I don't care how litigious you are."). Rather, the evidence was being admitted because it reflected on his credibility that he was too frightened to complain and/or that something in his particular psychological make up inhibited him from complaining. (Tr. 350). As explained to Mr. Censke, that evidence showed an undeviating pattern of strength, of resoluteness, of utter lack of fear, and uninhibitedness in expression that was inconsistent with Mr. Censke's testimony about why he did not complain about the horrors he said he experienced at the hands of MCC personnel. (Tr. 350-351).[13]

**3.**

At the start of the trial, prior to Mr. Censke's opening, I told him and counsel for the defendant that I was going to reconsider Judge Ashman's ruling granting Mr. Censke's motion *in limine* excluding evidence of certain of Mr. Censke's admitted history of filing suits accusing jail officials of abuse and mistreatment. (Tr. 5). Thus, Mr. Censke's claim, raised for the first time in his reply brief, that he was unaware that Judge Ashman's decision would be "revisit[ed]," he "would have <u>objected</u> to <u>all</u> policy and cross <u>examine</u> differently to evaluate motives or truths." (Plaintiff's Reply at 6)(underlinings in original). Apart from the fact that he said nothing at the outset of the

---

[13] Mr. Censke's alternative theory was that he did complain but that the evidence had disappeared from the MCC records. (Tr.355).

case or at any time thereafter being informed that the *in limine* ruling was being reconsidered, Mr. Censke makes no attempt to explain in what way the evidence related to "Policy" or how he would have cross examined the government's witnesses differently or testified differently than he did.

The limited evidence relating to some of Mr. Censke's past suits has nothing to do with the defendant's evidence in the form of MCC records and witness testimony regarding the absence of any complaints by Mr. Censke about the events that he contended caused him so much trauma. (Tr. 41, 45, 47, 126, 136,141,143, 145-47).[14] How Mr. Censke would have dealt with that evidence if the *in limine* ruling had not been changed he does not say and cannot show. Nor can he show how he would have cross examined the government's witnesses differently or how he would have testified differently on direct or cross. He was never cross examined about his past history of litigation. Perhaps the best evidence that Mr. Censke was not adversely affected by the ruling is the fact that he never said a word at any time about it through the trial.

### 4.
### Harmless Error

Even if admission of the evidence relating to certain prior lawsuits by Mr. Censke offered by the government (Dkt. 200, Tr. 266) was error, the plaintiff must demonstrate that he was harmed by the error. An error is harmless if it does not affect the complaining party's substantial rights. Fed. R. Civ. P. 61; *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012). Here, the outcome of the trial

---

[14] Mr. Censke's own witness, Dr. Dana, testified that she visited with Mr. Censke several times during his stay at the MCC between June and August of 2008, but that he never complained about a verbal assault by an officer at the MCC or about any mental or emotional injury he suffered at the hand s of anyone att the MCC. This was inconsistent with Mr. Censke's representation at the pretrial conference that he told Dr. Iskandar about his wrist injury [allegedly caused by the mistreatment charged in the Complaint] just as he did "many of the medical staff that visited the cell, including routine medical rounds... especially for a couple of days...." (Dkt. 189 at 11).

would have been the same even if Mr. Censke had never filed a previous lawsuit. Indeed, even if the government had the affirmative burden of proof to show beyond a reasonable doubt that Mr. Censke's allegations were false, the case would have come out the same way as it did.

The evidence of Mr. Censke's prior suits was used for a limited and proper purpose and not to show propensity. I explicitly stated that I was not considering any evidence related to any prior lawsuit initiated by Mr. Censke to show that he is litigious and therefore that his present allegations of wrongdoing were less worthy of belief. I specifically stated that the "plaintiff could be litigious and also be telling the truth." (Tr. 288). The ultimate determination that Mr. Censke was not telling the truth and the government's witnesses were was not based on the fact the Mr. Censke had been a plaintiff in other cases. Even without that evidence, the result of the trial would have been the same. Mr. Censke was not believable in the slightest; the defense witnesses were. And that judgment would have been made had this been Mr. Censke's first lawsuit as a plaintiff. The evidence against his position was overwhelming.

## II.

### The Government's Motion for Sanctions Against Mr. Censke For Inappropriate Comments In His Filings

Finally there is the government's motion that Mr. Censke be sanctioned under Rule 11, Fed.R.Civ.P., for having included language in his briefs, some of which is quoted at the beginning of this Opinion, that departs so far from the "standards of courtesy and professionalism required by this court — even for a *pro se* litigant — that sanctions are appropriate." *In re: Theophilus Green*, 42 Fed. Appx. 815 (7th Cir. 2002). While the government does not suggest what kind of sanction might be appropriate, of the government's argument cannot be lightly dismissed.

Mr. Censke's comments are by any objective measure, indecent and offensive – although he no doubt finds them creative and amusing. They most certainly are scandalous and indecent and thus can be stricken under Rule 11. But whether they are "threatening" is not so clear. Mr. Censke was entitled to vehemently criticize me or any other judge in whatever unflattering, intemperate, and distasteful fashion he chose. *Cf., Craig v. Harney,* 331 U.S. 367, 376 (1947). But this was a public filing in a federal court and was intended to be seen by me. *In re Sawyer,* 360 U.S. 622, 663 (Frankfurter, J., dissenting)(distinguishing between private conversations and public attacks on a judge by a lawyer actively involved in the case); *Barrett v. Harrington,* 130 F.3d 246, 262 (6th Cir.1997). Statements that in one context may be innocuous may be seen as a veiled threat in another, as Judge Posner observed in *Yuknis v. First Student, Inc.,* 481 F.3d 552, 555 (7th Cir.2007).

Still, Mr. Censke's past threats have not been particularly subtle. *See, e.g., Censke v. Clinton County Sheriff's Dept.*, 2006 WL 1766392 (W.D.Mich. 2006). For example, he threatened to kill the lawyer of his opponent in a civil case in these words: "this is a real fucking threat, fuck you, Joe Levy, you better fucking hide for the rest of your life because I'm the mother-fucker that at 90-fucking years old will put you in your mother-fucking grave." [Dkt 200, Tr. 272]. For Mr. Censke this was "nothing more than political rhetoric." (Tr. 272).[15]

Of course, on this record, Mr. Censke could be sanctioned. He has been involved in numerous civil cases in which he has represented himself and knows that the comments he willfully put in his filings were at the very least distasteful and insulting and improper. That is precisely why

---

[15] Even here, Mr. Censke could not give forthright testimony. When asked whether this was the language he used in his threat against Mr. Levy, the closest he would come to an answer was the quote attributed to him "may have been admitted in a court transcript." (Tr. 273). This sort of evasiveness pervades the trial transcript.

he included them. It is simply an extension to this civil case of Dr. Reinhardt's conclusion that Mr. Censke delights in "poking the criminal justice system." (Tr.267).

While *pro se* litigants are not exempt from the elemental rules of decency and decorousness that govern all lawyer and all parties in litigation, sanctioning would dilate this case without any likely benefit to the administration of justice in the federal courts. Deterrence of baseless filings in the district court is the desideratum of Rule 11. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990); *Cooney v. Casady,* 735 F.3d 514, 523 (7th Cir.2013). Given Mr. Censke's past and his pathology, imposing a monetary penalty under Rule 11(c)(4) would not be reasonably likely to deter him in the future; nor would it likely provide some measure of general deterrence since the universe of people likely to emulate Mr. Censke is infinitesimally small, and they, like Mr. Censke, will simply not be deterred by the imposition of some monetary penalty in this case.

It must be conceded that a contrary argument can be made, and any assessment of deterrence involves a weighing of imponderables and a prediction of events still in the womb of time. But the decision to grant or deny a motion for Rule 11 sanctions is within the sound judgment of the district court and will be disturbed only where the court abuses its discretion. That the Court of Appeals might have come to a different conclusion is not the test. *Compare Grochocinski v. Mayer Brown Rowe & Maw, LLP,* 719 F.3d 785, 800 (7th Cir.2013)(district courts refusal (in non Rule 11context) to award attorneys fees upheld even "though members of th[e] panel might have come to a different conclusion....").

If the government feels that discretion has been abused, it should not hesitate to seek review in the Court of Appeals.

## CONCLUSION

The plaintiff's Motion for Reconsideration/New Trial [Dkt. 216] is denied. The government's Motion for Sanctions against Mr. Censke [Dkt. 218 at 10] is denied.

DATE 7/2/29/14          **ENTERED:** _____
                                   **UNITED STATES MAGISTRATE JUDGE**

**Pursuant to Fed.R.App.P. 4(a), a Notice of Appeal must be filed in the United States Court of Appeals for the Seventh Circuit within 60 days after the entry of the order denying the plaintiff's motion for a new trial. The time limit under Rule 4(a) is jurisdictional.**